**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JAMES E. HOUCK,

    Petitioner,

    v.

WARDEN, et al.,

    Respondents.

Civil Action No.:  SAG-23-1961

------------------------------

JAMES E. HOUCK, SR.,

    Petitioner,

    v.

WARDEN,

    Respondent.

Civil Action No.:  SAG-24-209

**MEMORANDUM OPINION**

James E. Houck brings this consolidated habeas corpus Petition pursuant to 28 U.S.C. § 2254, challenging the legality of his 2013 conviction for first-degree sex offense in the Circuit Court for Montgomery County.  ECF No. 1. The Petition is ready for resolution and no hearing is necessary.  *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000).  For the reasons that follow, the Petition is denied as untimely.  And a certificate of appealability shall not issue.

**I. Background**

On March 3, 2011, Houck was indicted in the Circuit Court for Montgomery County, Maryland on six charges, including first-degree sex offense. ECF No. 12-1 at 17-18. In exchange

for dropping the other five charges, Houck agreed to plead guilty to first-degree sex offense. *Id.* at

20, 100-125. The guilty plea was entered on August 24, 2011. *Id.* The state described the factual

basis of the plea:

> Thank you, your honor. Your honor had the state proceeded to trial you would have heard testimony and we would have presented evidence that on January 7, 1995, at approximately 6:30 p.m. Margot Stevens who was 61 at the time answered a knock at the door thinking it was neighbor. Ms. Stevens had been on the phone when she opened the door slightly. A black male, approximately 6'1" or 6'2," 200 pounds wearing an army camouflage jacket, dark pants, and black knit cap forced his way inside her apartment.
>
> The subject hung up the phone and told Stevens to be quiet. The subject was armed with what appeared to be screwdriver. He demanded money and Stevens told him she only had six dollars. The subject forced Stevens into the bedroom and continued to question her about money. The suspect bound Ms. Stevens' hands and feet with [a] phone cord as he continued to search the apartment for money. It should also be noted that at this time Ms. Steven's had just had surgery and was in wheelchair or scooter like apparatus at the time.
>
> The suspect then told Ms. Stevens that he would rape her for all the trouble he had gone through. At this time the suspect pulled Stevens' pants down to her ankles and then unzipped his pants and partially pulled them down as well. The suspect attempted to force vaginal intercourse without success. The suspect then forced anal intercourse. He again attempted vaginal intercourse, without success. He performed oral sex on Stevens just briefly and then forced his penis into her mouth. After the suspect finished, he wiped himself and Stevens' vaginal area with the bedsheets, prior to leaving her apartment the suspect said that he did not want to kill her, and he told her not to call the police.
>
> The suspect obtained six dollars [in] cash. Ms. Stevens untied herself and then called Montgomery County police. After arrival of two officers, lookout was placed for the suspect. Metro Transit patrol officers observed a subject matching the description of the suspect on a southbound metro train from Twin Brook metro station heading towards Washington D.C. Metro Transit officer John McPartland boarded the train at Medical Center station. They were also, at that time, looking for a weapon that Ms. Stevens had described which was a black handled wood all [spelled phonetically] that the individual who had broken into her house had used and put up against her.
>
> Metro Transit officer John McPartland boarded the train at Medical Center station, while going from car-to-car officer McPartland observed the suspect seated near the front of one car then changed his position to the rear of the car. Several witnesses observed the subject toss something under the seat as he relocated to the

rear seat. Officer McPartland confronted the suspect and told him to be still. When the train reached the Friendship Heights metro station which is located in Montgomery County the suspect pulled to pass the officer, ran off the train and made his escape.

The witnesses then checked the seat where the suspect had been seated and recovered black handled wood all. Detectives from major crimes division and technical services were called to the scene at Ms. Stevens' apartment. The bedding and phone cords were recovered from the crime scene and Ms. Stevens was transferred to Shady Grove Hospital for sexual assault examination. The evidence was sent to Montgomery County crime lab for analysis and the results of the examination revealed that semen was found in each of the six stains found on the flat sheet obtained from Stevens' bedroom.

In January of 2004 cutting from the flat sheet contained semen stain sent to Body [spelled phonetically] lab in Virginia for DNA analysis. The result of the examination revealed a DNA profile from an unknown male suspect. That DNA profile was eventually matched and confirmed to be this defendant, James Edward Houck. Had the state gone to trial, we would have called an expert from Body who would testify that the male profile the DNA profile obtained from the sperm fraction and epithelia fraction of the sample from the bed sheet matches the DNA profile sample that was taken from James Edward Houck and within reasonable degree of scientific certainty James Edward Houck is the person who left the DNA and the semen sample on the bed sheet in the victims house. All those events having occurred in Montgomery County Maryland, that would be the state's case. The address of the actual event was 4 Monroe Street, Apartment 1109, Rockville, Montgomery County Maryland.

*Id.* at 117-120. On November 20, 2013, the Circuit Court sentenced Houck to life imprisonment. *Id.* at 196. Houck did not directly appeal his conviction or sentence.

Houck did, however, file a plethora of postconviction motions and petitions. The following history represents the motions and petitions that Houck filed and are relevant to the Court's analysis of the timeliness of his federal habeas petition.

Shortly after he was sentenced, on January 31, 2014, Houck filed a motion for modification of sentence. ECF No. 12-1 at 49-51, 418. It was denied the same day. *Id.* at 52, 418. On February 19, 2014, Houck filed another motion for modification of sentence (*id.* at 53-57, 418), which was denied on March 21, 2014. *Id.* at 418.

On March 21, 2014, Houck filed a petition for postconviction relief. *Id.* at 62-68, 418. Houck amended the petition once (*id.* at 69-77, 420) and it was later amended again by his appointed counsel. *Id.* at 78-99, 42. The Circuit Court initially denied Houck's petition on September 3, 2015. *Id.* at 222-247, 423.

Houck did not timely appeal the denial of his postconviction petition. That said, he filed a counseled motion to reopen his postconviction (*id.* at 249-253, 424), with an attached a letter from his appointed counsel advising Houck that counsel would promptly send him a copy of the Circuit Court's decision on his postconviction petition. *Id.* at 254-257. Houck's motion argued that he could not file a timely application for leave to appeal because his postconviction counsel did not receive a copy of the opinion in the ordinary course of business, likely because his counsel moved offices during the relevant time. *Id.* at 250. The state opposed Houck's motion. *Id.* at 258-261. On March 4, 2016, the Circuit Court denied Houck's motion to reopen. *Id.* at 299, 425.

Houck sought leave to appeal the denial of his motion to reopen to the Appellate Court of Maryland. *Id.* at 262-265, 426. On August 30, 2016, the Appellate Court of Maryland granted leave, vacated the Circuit Court's March 4, 2016, order, and directed the Circuit Court to hold a hearing on Houck's motion to reopen. *Id.* at 307.

On remand, the state withdrew its opposition to Houck's motion to reopen and the Circuit Court entered an order re-dating the denial of the postconviction petition as August 30, 2016. *Id.* at 308-310. This time, Houck filed a timely application for leave to appeal (*id.* at 312-359), which was denied by the Appellate Court of Maryland on March 13, 2017. *Id.* at 363-364. The mandate issued on April 14, 2017. *Id.* at 362.

Houck filed his next motion for modification of sentence almost a year later, on April 11, 2018. *Id.* at 427-430, 757. It was denied on July 13, 2018. *Id.* at 758. On March 20, 2020, Houck

filed yet another motion to reopen his postconviction petition (*id.* at 456-470, 760), which was denied on May 13, 2021. *Id.* at 636, 767.

Houck filed his Petition for a Writ of Habeas Corpus with this Court on July 20, 2023.[1] He alleges that: (1) fingerprint or DNA testing was not done at the scene of the crime, and (2) the state and defense counsel failed to test evidence that was found at the scene of the crime. ECF No. 1 at 5-9. The state filed a Limited Answer on September 27, 2023, arguing that the Petition is time-barred. ECF No. 12.

## II. Analysis

### A. Timeliness

28 U.S.C. § 2244(d)(1) provides that a petition for writ of habeas corpus seeking relief from a state court judgment must be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). 28 U.S.C. § 2244(d)(2), however, expressly excludes from that one-year calculation "[t]he time during which a properly filed application for State post-conviction or other collateral review ... is pending."

In this case, the one-year limitations period for filing for federal habeas relief runs from the date on which the judgment became final by the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). Houck did not appeal his guilty plea through the Maryland state courts. The deadline for him to have done so was thirty days from his sentencing, or **December 20, 2013.** *See* Md. Rule 8-204(b)(2)(A).

The statute of limitations is tolled while any collateral review is pending. This includes motions for modification of sentence. *See Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019) (holding

---

[1] The filing date is July 20, 2023, but this date is earlier than the date of Houck's signature, which is August 1, 2023. The reason for this is unclear, but the Court will accept the earlier date for the purposes of a timeliness analysis.

that Md. Rule 4-345, providing for reconsideration of sentence, tolls the one-year statute of limitations in § 2244(d)). On January 31, 2014, **42 days** after Houck's conviction became final, he filed a motion for modification of sentence. It was pending for a single day. Another **19 days** passed before Houck filed another motion for modification of sentence, which tolled the statute of limitations until the Appellate Court of Maryland issued its mandate on April 14, 2017, on their denial of leave to appeal the denial of his postconviction petition. Almost a year, **362 days**, passed until Houck filed his next motion for modification of sentence on April 11, 2018. Another **608 days** passed between the date the Circuit Court denied that motion, July 13, 2018, and when Houck filed his next collateral review—a motion to reopen his postconviction petition, on March 12, 2020.

By this time, well over a year had passed with no postconviction petitions or collateral review pending, rendering Houck's federal habeas petition, filed on or about July 20, 2023, untimely.[2]

### B. Equitable Tolling

No grounds permit the Court to equitably toll the limitations period. Equitable tolling may apply in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). To be entitled to equitable tolling, a petitioner must establish that delay in filing the petition resulted from respondents' wrongful conduct or other extraordinary circumstances beyond the petitioner's

---

[2] Respondents argue that the numerous motions filed by Houck seeking drug and alcohol assessment and treatment pursuant to Md. Rule § 8-505 and § 8-507 do not toll the statute of limitations. ECF No. 12 at 10. The Court need not address this argument because there is a single motion that changes the calculation (filed May 9, 2014 and denied July 10, 2014) and only by 62 days.

control.  *See Harris*, 209 F.3d at 330.  "[A]ny resort to equity must be reserved for those rare instances where ... gross injustice would result" absent the Court's intervention.  *Id.*

The Court ordered Houck to address Respondents' limitations argument.  ECF No. 17. Houck filed numerous pleadings. ECF Nos. 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 32, 33, 34, 35, 38. These pleadings repeatedly request that the Court order forensic testing but make no arguments related to equitable tolling.  The fact that a prisoner lacks legal training is insufficient to warrant equitable tolling.  *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (ignorance of the law is not a basis for equitable tolling). Houck has also repeatedly sought the appointment of counsel, claiming he is insufficiently literate to be able to advocate for himself. ECF Nos. 15, 16, 20. To the extent Houck's requests could be construed as a justification for equitable tolling, the scores of pleadings that Houck filed pro se at the Circuit Court and the dozens of pleadings he filed in this matter belie his contention. Because Houck has failed to demonstrate that equitable tolling is warranted, the Court must dismiss the Petition as untimely.

### C.  Actual Innocence

Actual innocence is an "equitable *exception* to [28 U.S.C.] § 2244(d)(1), not an extension of the time statutorily prescribed." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (emphasis in original).  "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief." *Id.* at 392. Houck has not overtly invoked the actual innocence exception.  He did, however, file a petition for a writ of actual innocence with the Circuit Court. ECF No. 12-1 at 471-504.

The merits of a petition which is time-barred, may be reached if "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 569 U.S. at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Examples of the

type of new evidence that have been found to satisfy the actual innocence gateway standard are: (1) new DNA evidence and expert testimony "call[ing] into question" the "central forensic proof connecting [the petitioner] to the crime," as well as "substantial evidence pointing to a different suspect," *House v. Bell*, 547 U.S. 518, 540–41 (2006); (2) "sworn statements of several eyewitnesses that [the petitioner inmate] was not involved in the crime" and affidavits "that cast doubt on whether [the petitioner inmate] could have participated" in the offense, *Schlup*, 513 U.S. at 331; (3) a third party's consistent and repeated statement that the third party committed the offense, *Jones v. McKee*, No. 08 CV 4429, 2010 WL 3522947, at *9–1 (N.D. Ill. Sept. 2, 2010); *Carriger v. Stewart*, 132 F.3d 463, 478–7 (9th Cir. 1997) (finding that the petitioner opened the actual innocence gateway where another person testified under oath that he committed the offense and separately boasted to other individuals that he set-up the petitioner); and (4) documentary evidence indicating that the petitioner was in another country on the day of the offense and five affidavits from individuals stating that the petitioner was outside the country at the precise time of the offense, *see Garcia v. Portuondo*, 334 F. Supp. 2d 446, 452–55 (S.D.N.Y. 2004). *See generally Schlup*, 513 U.S. at 324 (providing the Supreme Court's statement that examples of sufficient new reliable evidence for a gateway claim include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Whether a petitioner has satisfied the miscarriage of justice exception requires the reviewing court to consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House*, 547 U.S. at 538 (internal quotation marks omitted). The new evidence must be evaluated with any other admissible evidence of guilt. *Wilson v. Greene*, 155 F.3d 396, 404–05 (4th Cir. 1998). "To be credible, a claim of actual innocence must be based on reliable evidence

not presented at trial." *Schlup*, 513 U.S. at 324. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 315–17.

The Supreme Court "caution[ed], however, that tenable actual-innocence gateway pleas are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (brackets omitted) (quoting *Schlup*, 513 U.S. at 329; *House*, 547 U.S. at 538; *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Claims of actual innocence … should not be granted casually") (internal citations omitted)). To sustain a credible claim of actual innocence a petitioner must marshal "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. The gateway actual innocence "standard is demanding and permits review only in the extraordinary case." *House*, 547 U.S. at 538 (citation omitted); *see, e.g., McQuiggin*, 569 U.S. at 401 ("We stress once again that the [actual innocence] standard is demanding."); *Wilson*, 155 F.3d at 404 ("Claims of actual innocence … should not be granted casually.").

"At the same time, though, the [actual innocence] standard does not require absolute certainty about the petitioner's guilt or innocence." *House*, 547 U.S. at 538. "Rather, the petitioner must demonstrate that more likely than not, in light of new and reliable evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *Teleguz v. Zook*, 806 F.3d 803, 809 (4th

Cir. 2015) (citing *House*, 547 U.S. at 538).  The actual innocence determination "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard."  *House*, 547 U.S. at 539 (internal citations and quotations omitted); *Finch v. McKoy*, 914 F.3d 292 (4th Cir. 2019).

In reviewing the record, the Court must "make a probabilistic determination about what reasonable, properly instructed jurors would do.  The Court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors."  *House*, 547 U.S. at 538 (internal citations and quotations omitted).  The petitioner must "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.  Only if petitioner passes through the actual innocence gateway by satisfying this standard, can this Court consider and reach the merits of his claims.  *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012) (internal citations omitted).

Houck argued in his state court petition for a writ of actual innocence that three pieces of evidence from the crime scene were not forensically tested. ECF No. 12-1 at 471-504. The Circuit Court, without further explanation, denied the petition for failing to substantially comply with Md. Rule 4-332. *Id.* at 634-635. Like the federal standard, Md. Rule 4-332 requires a petitioner to produce "newly discovered evidence."

Houck cannot pass through the actual innocence gateway as an excuse for his untimely habeas petition. He offers no new evidence, only repeated requests to test evidence that was found at the crime scene. Houck plead guilty at a plea hearing where the factual basis offered by the state included his DNA matching the semen stain from the victim's bed sheets. What's more, Houck matched the description given by the victim, attempted to flee from police, and was found with a

weapon matching the description given by the victim upon capture. ECF No. 12-1 at 117-120. Houck's mere hope for additional forensic testing falls far short of the demanding standard for the actual innocence gateway.

In sum, Houck cannot meet the standard for the actual innocence gateway because he has failed to produce new reliable evidence that would have caused no reasonable juror to find him guilty beyond a reasonable doubt. His federal habeas Petition is therefore untimely.

### III. Certificate of Appealability

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684-685 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Houck has not demonstrated that a certificate of appealability is warranted, and so the Court shall not issue it. Houck may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

### IV. Conclusion

For the foregoing reasons, the Court will deny Houck's Petition for Writ of Habeas Corpus and decline to issue a Certificate of Appealability. A separate Order follows.

May 5, 2026

Date

/s/

Stephanie A. Gallagher
United States District Judge

11